IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ola Ali, | : |
| | : |
| | : Case No. 2:23-cv-00794 |
| Plaintiff, | : |
| v. | : Judge Graham |
| | : |
| Columbus State Community College, | : Magistrate Judge Deavers |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court upon the motion of Defendant Columbus State Community College ("CSCC") for summary judgment. Defs.' Mot., doc. 32. In her First Amended Complaint, Plaintiff Ola Ali ("Dr. Ali") alleges that CSCC discriminated against her in a series of hiring decisions and then retaliated against her when she complained of the discriminatory conduct, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Am. Compl., doc. 16. For the reasons that follow, Defendant's motion is **GRANTED**.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

[2]

## STATEMENT OF FACTS

Dr. Ola Ali is Muslim and originally from Egypt. Pl. Dep., doc. 25, 6:2-5. She describes her race as "Mediterranean from the middle east." *Id.* at 5:25-6:1. Dr. Ali was employed by Defendant CSCC in an "annual contracted faculty" ("ACF") position from August 2013 to Spring 2022, as a part of the Anatomy and Physiology ("A&P") group within the Biological and Physical Sciences ("BPS") Department.[1] As set forth in Dr. Ali's hiring documents, an ACF role was "neither tenured nor tenure track," and a one-year appointment to an ACF role carried no commitment that the appointee would be re-appointed to an ACF role the following year. *Id.* at Ex. 4. Nevertheless, Dr. Ali's appointment to the ACF role was renewed annually from 2014 through 2021. *Id.* at 39:9-40:20. Dr. Ali describes the ACF contract renewal as "automatic," because she did not need to re-apply each year. Pl.'s Resp., doc. 34, 2-3. However, in Spring, 2022, CSCC notified Dr. Ali that her ACF contract would not be renewed, and Dr. Ali's employment was formally terminated at the end of the summer semester. Bill Dep., doc. 27, 112:12-25.

During Dr. Ali's period of employment in the ACF role, she applied for tenure-track positions in the BPS department on four (4) separate occasions but was not hired for any such position. Doc. 26-2, # 836-37. On each occasion, CSCC ultimately chose to hire candidates who Dr. Ali characterizes as Caucasian, non-Muslim,[2] as well as younger and less experienced than herself. *Id.*

---

[1] Ali was initially hired approximately 18 months prior, in March 2012, as a part-time adjunct professor. She was rehired in an ACF role and spent the remainder of her employment in that role. Pl. Dep., doc. 25, 24:13-25:2 # 181-82.

[2] Both parties note that CSCC would be unaware of a candidate's religion unless the candidate chose to voluntarily disclose the same (as Ali had done during her employment). No candidates who were hired for roles for which Ali applied had disclosed that they were Muslim, and, unlike Ali, no such candidates wore a hijab—a head-covering closely associated with Islam.

First, Dr. Ali applied for a tenure-track position in March 2019. Pl. Dep., 63:3. The hiring committee selected Dr. Ali and two (2) other candidates for the first round of interviews based on the application materials submitted. *Id.* at 66:18-23. The two (2) other candidates were chosen to advance to the next round of the interview process, after which one (1) of said candidates was selected for the role. *Id.* The hiring committee cited the selected candidate's interview performance as a distinguishing factor which led to her selection over the other two (2) candidates, including Dr. Ali. Doc. 26-2, # 838.

Second, Dr. Ali applied for another tenure-track position in February 2021. Dr. Ali was one (1) of six (6) candidates interviewed by the hiring committee in the first round. Bill Dep., 68:4-69:3. This time, Dr. Ali was selected to proceed to the next round of interviews, along with one (1) additional candidate of the initial six (6). *Id.* The hiring committee eventually selected the other candidate for the tenure-track position, again citing to interview performance as a distinguishing factor. Doc. 26-2, # 838. Following this process, Dr. Cathy Bill, then the Chairperson of the BPS department, met with Dr. Ali to discuss her interview performance and how she might improve in that area. Bill Dep., 212:8-13.

Dr. Ali applied for a tenure-track position for a third time in November 2021. *Id.* at 212:14-18. Dr. Ali was one (1) of four (4) candidates initially interviewed for the position. Bill Aff., doc. 32-3, ¶ 11. While the hiring committee indicated that Dr. Ali's interview performance had improved, one (1) candidate scored much higher than the other three (3) candidates. *Id.* at ¶¶ 12-13. The high-scoring candidate was the only candidate selected for a second interview and was eventually selected for the tenure-track position. *Id.* at ¶ 15.

A few months later, on March 28, 2022, Dr. Bill informed Dr. Ali and another ACF in the BPS Department that their ACF positions would be eliminated and converted to tenure-track roles.

*Id.* at ¶ 16. Dr. Bill invited Dr. Ali and the other ACF to apply for the new tenure-track roles. Bill Dep., 112:12-25. In total, the college was eliminating 20 ACF positions, five (5) of which were in the BPS Department, two (2) of which were in Dr. Ali's A&P group, one of which was vacant (the other held by Dr. Ali). Todd Aff., doc. 32-2, ¶ 11. During this conversation, Dr. Ali raised concerns (for the first time) about what she believed was discriminatory treatment in the prior hiring processes. Bill Aff., ¶ 16. Dr. Bill relayed Dr. Ali's concerns to human resources, who soon reached out to Dr. Ali. *Id.*

Meanwhile, the hiring process for the two new tenure-track roles—replacing Dr. Ali's ACF role as well as a vacant ACF role in the A&P group—began in April 2022. *Id.* at ¶ 18. Dr. Ali was one (1) of seven (7) candidates interviewed for the two (2) open positions. *Id.* at ¶ 19. Though the hiring committee again had issues with Dr. Ali's interview performance, she was nevertheless selected to proceed to the second round of interviews along with three (3) other candidates. *Id.* at ¶ 20. Ultimately, in July 2022, CSCC selected two (2) of the other candidates to fill the positions. Todd Aff., ¶ 12.

Dr. Ali filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 19, 2022. Doc. 32-4. On the EEOC charge form, Dr. Ali indicated that she was discriminated against based on her race, religion, national origin, and age; however, she left the "retaliation" box unchecked. *Id.* Under "Dates discrimination took place," Dr. Ali indicated a time frame of January 1, 2021, to August 1, 2022. *Id.*

### DISCUSSION

"Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." *Solis v. Ohio State Univ. Wexner Med. Ctr.*, No. 24-

3230, 2024 WL 4579501, at *2 (6th Cir. Oct. 25, 2024) (citing 42 U.S.C. § 2000e-2(a)(1)). Employees are empowered by the same statute with a cause of action against "discrete acts" of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002).

When a claim is based on indirect evidence of discrimination, courts apply the burden-shifting, *McDonnell Douglas* framework to evaluate such claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). First, the Title VII plaintiff must establish a prima facie case of discrimination. *Id.* If successful, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the challenged act. *Id.* If the employer can articulate such a reason, the burden shifts back to the plaintiff to be "afforded a fair opportunity to show that [the employer's] stated reason" for the challenged act "was in fact pretext." *Id.* at 804.

In the instant case, Plaintiff Ali has asserted four (4) claims against Defendant CSCC in her amended complaint, alleging that CSCC discriminated against Dr. Ali on the basis of race (Count I), national origin (Count II), and religion (Count III), and that CSCC retaliated against Dr. Ali when she raised concerns about the alleged discrimination (Count IV). CSCC argues that Dr. Ali cannot establish her claims of discrimination and retaliation based on the undisputed factual record. First, however, CSCC argues that the temporal scope of Dr. Ali's claims must be limited by the relevant statute of limitations, and the bases of liability must be limited by the claims identified in the EEOC charge.

## I. Scope of Dr. Ali's Claims – Relevant Time Frame

Pursuant to 42 U.S.C.A. § 2000e-5 (West), a Title VII plaintiff must file a discrimination charge with the EEOC within 300 days of the alleged discriminatory action. Dr. Ali filed her EEOC charge on September 19, 2022. Therefore, CSCC contends that "any claims of alleged discrimination occurring before November 23, 2021, are outside the statute of limitations, and cannot be considered." Doc. 32, 8.

In *National R.R. Passenger Corp v. Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. Plaintiff has not offered argument against the application of this time bar, and the Court therefore grants CSCC's motion for summary judgment to the extent that Dr. Ali's complaint seeks relief for acts of discrimination occurring before November 23, 2021, including as to any such acts related to the hiring procedures described above in March 2019 and February 2021.[3]

## II. Scope of Dr. Ali's Claims – Claims Raised in EEOC Charge

CSCC next contends that summary judgment is warranted as to Dr. Ali's claim of retaliation (Count IV of the complaint) because she failed to allege retaliation in her EEOC charge. Dr. Ali contends that the facts alleged in the EEOC charge and accompanying letter were sufficient to put CSCC on notice of her retaliation claim. Doc. 24, 10.

---

[3] Even if the Court assumes that this time bar does not exclude the November 2021 hiring process, Dr. Ali does not frame her non-selection for that position as an adverse employment action. As set forth *sub*, Dr. Ali focuses her argument on the final hiring process, beginning April 2022, alleging that she was ultimately replaced by the non-protected individuals eventually hired by CSCC. Dr. Ali's "replacement" theory does not fit with her non-selection out of the November 2021 hiring process, as she continued to work for CSCC through the end of her ACF contract in Summer 2022. Regardless, the analysis as to the April 2022 hiring process applies with like force to the November 2021 process.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). However, when a charge is filed by a lay person—as is often the case—rather than with the assistance of counsel, such "*pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362. And when an EEOC investigation reveals evidence of discrimination beyond what the complainant has identified in the charge, "a lawsuit based on the newly understood claim will not be barred." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Finally, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.*

Dr. Ali has attached her EEOC charge form as Exhibit 1 to her response in opposition to the present motion. Doc. 34-1, 1. The charge form includes a section where the complainant is asked to identify what the alleged discrimination is based on, in which Dr. Ali has checked the boxes indicating discrimination based on "Race," "Religion," "National Origin," and "Age."[4] *Id.* The box for "Retaliation" is left unchecked. Nevertheless, Dr. Ali contends that her retaliation claim should survive because she described facts establishing a retaliation claim in a letter submitted to CSCC with the EEOC charge, titled "Notice of Claims." *Id.* at 3. The letter states that "based on the facts and circumstances surrounding Dr. Ali's employment, it is evident she was denied tenure and terminated due to her age, race, national origin, and religion," but it does not allege retaliation. *Id.* The letter goes on to describe the termination of Dr. Ali's ACF position,

---

[4] Dr. Ali's charge form indicates that she checked the "Age" box solely to "preserve [her] rights under the Age Discrimination in Employment Act ("ADEA")," and that she did not seek an agency investigation on any claim based on age discrimination. Regardless, she raises no age-related claim in her complaint before this Court.

[8]

which precipitated her HR complaint alleging discriminatory treatment, and her non-selection for the tenure-track roles that replaced the ACF positions, but at no point does Dr. Ali allege any causal link between protected activities and adverse employment actions.

The Court agrees with CSCC that Dr. Ali has failed to raise a retaliation claim in her EEOC charge, and thus she is barred from pursuing the same in the instant case. Dr. Ali has not identified any persuasive reason to deviate from the general rule requiring that all claims be included in the preceding EEOC charge. *See Younis*, 610 F.3d at 361. The charge form and the accompanying Notice of Claims letter were prepared by Dr. Ali's counsel. Therefore, she is not entitled to the liberal claim construction afforded *pro se* litigants, allowing the Court to consider "claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* And though the Notice of Claims letter sets out the raw factual ingredients of potential retaliation claim, any suggestive force of those facts is outweighed by the multiple instances in the charge form and letter which expressly identify the bases of discrimination and make no mention of retaliation. In sum, the Court will grant CSCC's motion as to Dr. Ali's claim of retaliation (Count IV).

### III. Dr. Ali's Claims of Race, National Origin, and Religious Discrimination

The remaining claims concern Dr. Ali's allegations of discrimination based on race, national origin, and religion, when CSCC eliminated the ACF position then held by Dr. Ali and declined to select her for one of the tenure-track roles replacing the eliminated ACF positions.[5] Dr. Ali argues that CSCC's actions effectively "replaced" Dr. Ali with non-protected individuals. Doc. 34, 9. Framing things differently, CSCC argues that Dr. Ali is challenging two distinct actions and therefore the elimination of the ACF positions should be analyzed separately from the decision to

---

[5] Though Dr. Ali applied for one (1) of two (2) tenure-track positions following the elimination of the ACF positions, the school conducted a singular hiring process, with all candidates considered for both positions simultaneously. Thus, as to both positions, Dr. Ali's non-selection would constitute a single adverse employment action.

[9]

not select Dr. Ali for one of the tenure-track positions. Specifically, CSCC argues that the elimination of the ACF positions should be analyzed as a "reduction-in-force" ("RIF"). Under either view, the Court finds that Dr. Ali has not carried her burden.

### A.

Dr. Ali first carries the burden of establishing a prima facie case. This burden requires Dr. Ali to show: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.[6] *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). For the purposes of summary judgment, CSCC does not dispute that Dr. Ali can establish the first three (3) elements. Rather, the parties center their dispute on the fourth element.

Dr. Ali argues that the fourth element is satisfied because she was "replaced by two Caucasian, non-Muslim individuals." Doc. 34, 9. In contrast, CSCC argues that Dr. Ali was not "replaced" because the ACF position she held was eliminated, and thus no one thereafter held a position previously held by Dr. Ali. Furthermore, CSCC argues that Dr. Ali was not "replaced" by the two individuals selected for the tenure-track positions because tenure-track positions "carry vastly different job terms and duties than that of an ACF member," citing the longevity of the position and the additional duties, such as course design. Def.'s Reply, doc. 35, 11. *See also Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.").

---

[6] Notably, Dr. Ali does not argue that she was treated differently than similarly-situated, non-protected employees. Dr. Ali only argues her replacement theory as to the fourth element of her prima facie case.

[10]

Dr. Ali has offered little more than a conclusory declaration that she was replaced by a someone outside her protected class. She has offered no argument and identified no facts which would refute CSCC's claim—supported by citations to the record—that the tenure track positions are "vastly different" than an ACF position, and thus blurring the notion of "replacement." However, even CSCC's briefing describes "certain remaining teaching slots," including Dr. Ali's, as "converted" to permanent tenure-track roles. Doc. 32, 10. Thus, to the extent that the elimination of Dr. Ali's position was a business decision, it was only half of one, with the other half as the conversion (or replacement) of some of the ACF roles into tenure-track positions. In sum, the Court finds that whether Dr. Ali was "replaced" presents a question of fact precluding summary judgment on this basis.

### B.

CSCC has met its burden by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Dr. Ali has not met her burden of showing a genuine dispute of material fact as to whether CSCC's stated reasons were pretext for discrimination.

Assuming *arguendo* that Dr. Ali can establish a prima facie case for her discrimination claims, the burden then shifts to CSCC to demonstrate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If CSCC can make such a showing, the burden shifts back to Dr. Ali to identify evidence that CSCC's stated reasons are pretextual. "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).

Again, the parties take differing views on what constitutes the adverse employment action that Dr. Ali is challenging. As described above, CSCC argues that the elimination of the ACF role

and the non-selection of Dr. Ali to the tenure-track role are two separate employment actions and must be analyzed as such. To that end, CSCC has articulated legitimate, nondiscriminatory reasons for both adverse actions. CSCC has submitted materials supporting its claim that the ACF positions were eliminated for business considerations, such as "[department] needs, student enrollment, budget constraints, and the number of ACF positions allowed under the CBA." Doc. 32, # 2233. Dr. Ali's ACF position was one of 20 eliminated by CSCC at that time. Todd Aff., ¶ 11. CSCC has also provided interview scores from the hiring process which support the school's claim that the candidates who were hired for the tenure-track positions had scored higher for their interview performances than Dr. Ali. *See, e.g.,* Bill Aff., ¶ 21. These reasons are sufficient to shift the burden back to Dr. Ali to identify evidence upon which a jury could reasonably find CSCC's stated reasons to be pretextual.

Dr. Ali conflates the two actions into one, eliding important details, and muddling her arguments for pretext in the process. For example, as to the first means of showing pretext, Dr. Ali argues that "there is evidence raising a question of fact that [CSCC's] purported **reason for termination** was 'factually false.'" Doc. 34, 16 (emphasis supplied). But Dr. Ali was not terminated—her contract was not renewed, and she was not hired for another position. The "evidence" that Dr. Ali refers to is her allegedly superior education and greater seniority, as compared to the candidates who were eventually selected for the tenure-track position.[7] Dr. Ali therefore contends that CSCC's assertion that the other candidates had a better interview performance presents a question of fact, given Dr. Ali's resume. But education and work experience are separate considerations from interview performance, and Dr. Ali's assertion that

---

[7] Dr. Ali's strong resume is not compelling evidence that CSCC's business considerations for eliminating the ACF positions were pretextual, and she does not otherwise offer any argument nor cite any facts upon which a reasonable jury could find pretext.

[12]

she excelled in the former categories does not put into dispute CSCC's assertion that she faltered in the latter. *See Thompson v. City of Columbus*, No. 2:12-CV-01054, 2014 WL 1814069, at *7 (S.D. Ohio May 7, 2014) ("[C]ourts must keep in mind that a plaintiff's subjective belief that he or she was more qualified than other applicants is insufficient to create a question of fact and defeat a summary judgment motion."). Dr. Ali does not dispute the fact that CSCC hired the candidates with superior scores—only that the scoring process was "subjective." Pl. Dep., 78:16-23.

An affidavit from Nick Hardin, a Human Resources employee at CSCC, states that the search committees for tenure-track positions "ask[ed] all candidates the same questions and fill[ed] out sheets which rated each candidate." Hardin Aff., ¶ 5. From those ratings, each candidate receives an "overall score" from the search committee.[8] *Id.* For her February 2021 candidacy, Dr. Ali received an overall score of 318; the committee selected a candidate who received an overall score of 375. Bill Aff., ¶¶ 6-8. For her November 2021 candidacy, Dr. Ali received an overall score of 383; the committee selected a candidate who received an overall score of 497. *Id.* at ¶¶ 12-13. Finally, for her April 2022 candidacy, Dr. Ali received an overall score of 508; the two candidates selected for the tenure-track positions received overall scores of 606 and 583. *Id.* at ¶¶ 20-21. Therefore, Dr. Ali has failed to demonstrate pretext under the "no basis in fact" theory. *Seeger*, 681 F.3d at 285.

As to the second means of showing pretext, Dr. Ali must show that the other candidates' higher interview scores "did not actually motivate" CSCC's decision to not select Dr. Ali for a tenure-track position. *Id.* On this point, Dr. Ali argues that CSCC's reason for not hiring her "was likely that [she] made a protected complaint based on discrimination just months prior, against the same individual who had the decision making power." Doc. 34, # 2281. But as the Court concluded

---

[8] For reasons unknown, neither party has provided any scores from the March 2019 hiring process.

[13]

above, Dr. Ali cannot maintain her retaliation claim, as it was omitted from her EEOC charge. Regardless, Dr. Ali's conclusory allegation of retaliation does not establish that CSCC's reasons were pretextual.

As to the third means of showing pretext (that the proffered reasons are "insufficient to warrant the action"), Dr. Ali again points to her allegedly superior experience and education, arguing that "non selection was not the proper action." *Id.* But again, her subjective belief in her qualifications is not sufficient to establish pretext. *Thompson*, 2014 WL 1814069, at *7.

Finally, Dr. Ali provides the following list of "undisputed 'covert' facts," against which she contends CSCC's stated reasons "cannot pass the pretext analysis":

1) Ali is also the only individual who wore a hijab- from the individuals who worked with Ali, interviewed her, participated in her discrimination complaint investigation and from the individuals who were ultimately selected for a position.
2) [Department Chairperson, Cathy] Bill testified Ali is the only ACF whose position switched to a tenured position wherein the prior ACF instructor was not selected for the tenured position.
3) But for Bill making the decision to eliminate[] Ali's ACF position, she would have still been teaching it.
4) Ali is the only individual who has ever complain[ed] to Bill about discrimination.
5) Ali is the only foreigner in the anatomy and physiology group.
6) All of the individuals from 2018-2022 who received [tenure-track] positions were Caucasian.

Doc. 34, # 2281-82. Of the above list, item (1) essentially reiterates her protected-class status, a necessary showing for her prima facie case, but of no weight in the pretext analysis. Item (3) is speculative, and, in any event, it is unclear how such an assertion would establish pretext—to the contrary, Dr. Ali has offered nothing to refute CSCC's legitimate, nondiscriminatory reasons for

[14]

eliminating the ACF positions. Item (4) pertains to Dr. Ali's retaliation claim which the Court has previously concluded cannot proceed.[9] Item (5) is factually false—the candidate hired (over Dr. Ali) for the tenure-track position that opened in February 2021 was from Lebanon, and Dr. Bill testified that the anatomy and physiology department also had foreign-born adjunct faculty. Bill Dep., 195:1-14.

Items (2) and (6) are, at best, misleading, and depend on inconsistent, self-serving frames of reference. For instance, item (2) refers to the fact that five ACF roles were eliminated in the Biological and Physical Sciences department and converted into tenure-track roles. One such ACF role was vacant; of the remaining four ACF instructors, Dr. Ali was the only one who was not hired for the tenure-track position converted from her ACF roles. Of the three ACF members who *did* receive the tenure-track roles, two were Caucasian, and the third was Asian. So, how can Dr. Ali then allege, in item (6), that "all of the individuals from 2018-2022 who received tenure-track positions were Caucasian"? Only by limiting the frame of reference for item (6) to the tenure-track positions specifically hired in the smaller A&P group within the broader BPS department.[10] And even that frame of reference includes the foreign-born Lebanese candidate hired in 2021, as that candidate self-identified as Caucasian.[11]

---

[9] Setting aside the procedural bar to the retaliation claim, Dr. Ali fails to present compelling evidence that CSCC's stated reasons were pretext for retaliation. As an initial matter, Dr. Ali only raised her concerns of discrimination in March 2022, *after* CSCC decided to eliminate her ACF position. Thus, to the extent that Dr. Ali contends CSCC retaliated by "replacing" her, the timing presents an issue. Construing her claim to allege that CSCC retaliated by declining to hire her in July 2022, Dr. Ali's only evidence is the temporal proximity between the protected action in March 2022 and her non-selection in July 2022. The Sixth Circuit has made it clear "that temporal proximity cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012).

[10] This frame of reference is further restricted—to Dr. Ali's benefit—by relying on the testimony of BPS Chairperson Dr. Cathy Bill, which was in turn limited by Dr. Bill's relatively short tenure as chairperson during the relevant events.

[11] Not unlike Dr. Ali, who identified herself as "white" on her initial hiring documents. The Court does not place much weight on that self-selection for the purposes of Dr. Ali's discrimination claims—Dr. Ali claims that someone told her to check that box, and, in any event, the form appears to lack a box that would more accurately reflect her self-identification—but neither does it find compelling Dr. Ali's use of "Caucasian"

Overall, Dr. Ali's "covert facts"—to the extent that they are indeed factual—simply restate the circumstances of her prima facie case. But Dr. Ali needs more than that to establish a genuine dispute of material fact as to whether CSCC's "legitimate, nondiscriminatory reasons" were pretextual. In particular, Dr. Ali has failed to present any evidence connecting her protected status with CSCC's decision to terminate her ACF position and then decline to hire her for a tenure-track position. When asked in her deposition if she had any "objective facts… that Columbus State selected another person based upon their race, national origin, or religion," she reiterated the circumstantial evidence that goes to her prima facie case: "if my resume and my experience is more than a Caucasian person but they choose a Caucasian person over me… this is circumstantial evidence that I have been discriminated against." Pl. Dep., 78:6-15. And when asked whether she had any evidence showing "that Columbus State selected a candidate… with a lower rating than [her]," she answered, "Their rating is subjective… it comes from the person's opinion, which is affected by if they like you or not." *Id.* at 78:16-23.

But it is well established that "reliance on subjective evaluation criteria, 'without more, does not establish pretext.'" *Sullivan v. Metro Knoxville HMA, LLC*, No. 24-5531, 2025 WL 263456, at *4 (6th Cir. Jan. 22, 2025) (quoting *Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006). Dr. Ali bears the fundamental burden of establishing "a link between the subjective… criteria and any discriminatory intent" by CSCC. *Browning*, 436 F.3d at 697. "Conclusory allegations don't create that missing link." *Sullivan*, 2025 WL 263456, at *4. But conclusory allegations are all Dr. Ali can muster on this record: "Defendants selected individuals who were less qualified than Ali based on having less experience and less education than Ali… Likely because they were not in a protected class, they were Caucasian." Doc. 34, # 2282.

---

as a proxy for individuals "not in a protected class" (doc. 34, # 2282), nor her shifting, self-serving frames of reference for her circumstantial evidence.

[16]

Dr. Ali is correct that subjective rating criteria "is affected by if they like you or not," (Pl. Dep, 78:23) and that such criteria can "sometimes make it difficult to distinguish between lawful and unlawful employment actions." *Beck v. Buckeye Pipeline Servs. Co.*, 501 F. App'x 447, 450 (6th Cir. 2012). But Dr. Ali's position fails to account for the possibility that whether "they like you or not" may not be a manifestation of discrimination, and she has failed to marshal sufficient evidence linking the subjective criteria with discriminatory intent. *See Lawroski v. Nationwide Mut. Ins. Co.*, 570 F. App'x 589, 594 (6th Cir. 2014) (holding that legitimate, nondiscriminatory reasons for adverse action include "negative impression" of plaintiff). Setting aside the Court's issues with their accuracy, Dr. Ali's "covert facts" are, in essence, statistical arguments without sufficient data to be statistically significant under Sixth Circuit precedent. For example, item (6) refers to "all of the individuals from 2018-2022 who received [tenure-track] positions," a group which the Court understands to include only five (5) people.[12] *But see, e.g.*, *Sullivan*, 2025 WL 263456, at *5 (sample of 36 "too small… to generate a statistically significant difference.").

In sum, Dr. Ali has failed to establish that the legitimate, nondiscriminatory reasons for her adverse employment action were in fact pretext for discrimination. Dr. Ali can point to no evidence beyond her own subjective beliefs that she was a superior candidate and that CSCC's failure to share that belief can only be explained by discrimination. But CSCC has met its burden by showing otherwise. At the end of the day, "the question is always whether the employer made

---

[12] Same with item (2), which states that "Ali is the only ACF whose position switched to a tenured position wherein the prior ACF instructor was not selected for the tenured position." This refers to a data set of only four (4) individuals, one of whom was Dr. Ali. Todd Aff., ¶ 11; Bill Dep. 54:9-55:9. As to both Items (2) and (6), expanding the data sets undermines Dr. Ali's argument. Item (2) refers only to the two years that Dr. Bill was chairperson during the relevant events, though Dr. Bill also testified that, prior to her tenure as chair, she knew of other ACF instructors who were not selected for the tenure-track role to which their ACF position was converted. *Id*. As noted *supra*, item (6) refers only tenure-track hires in the A&P group; expanding the frame of reference to include the broader BPS department would bring at least one non-Caucasian tenure-track hire into the (still-too-small) data set. *Id*. at 204:11-15.

up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Dr. Ali has not presented sufficient evidence such that a jury could reasonably doubt the reasons given by CSCC.

## CONCLUSION

Defendant Columbus State Community College is entitled to summary judgment as a matter of law. Plaintiff Dr. Ola Ali has not established a genuine dispute of material fact which would move a reasonable jury to a different conclusion. Therefore, for the reasons set forth above, the motion for summary judgment of Defendant Columbus State Community College is hereby **GRANTED**.

**IT IS SO ORDERED**.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: February 24, 2025